The Chicago and Eastern Illinois Railroad Company

*v.*

John McAuley.

*Filed at Ottawa March 22, 1887.*

1.   Limitation—*eminent domain—damages to contiguous property, not taken.* Upon the construction and putting into operation of a railroad, all damages to contiguous property along the line of the road, present and prospective, from the location and operation of the road, are immediately recoverable, and must all be recovered in one action; and if an action is not brought until after the lapse of five years, the Statute of Limitations will bar a recovery for any sum.

2.   Same—*as to injury from nuisances—those which are permanent in character, and those not permanent but continued.* Where the original nuisance to land is of a permanent character, so that the damages inflicted thereby are permanent, a recovery not only may, but must, be had for the entire damages, in one action; and such damages accrue from the time the nuisance is created, and from that time the Statute of Limitations begins to run.

3.   In the case of nuisances which are transient rather than permanent in their character, the continuance of the injurious acts is considered a new nuisance, for which a fresh action will lie; and although the original cause of action is barred, damages may be recovered for the continuance of the nuisance.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Thomas A. Moran, Judge, presiding.

Mr. William Armstrong, for the appellant.

Mr. H. O. McDaid, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by John McAuley, against the Chicago and Eastern Illinois Railroad Company, on June 10, 1881, to recover damages for the construction and operation of its railroad so near lot 5, in block 9, Carpenter's addition

to Chicago, (property owned and occupied by him,) that the property has been materially damaged and depreciated in value. The principal ground of complaint, as alleged in the declaration, and as attempted to be shown by the evidence, is, that in consequence of the running of trains on defendant's tracks, constructed close to the premises of plaintiff, his property has been jarred and vibrated, and dust, smoke, cinders, ashes and other substances have been cast and thrown in and upon his dwelling and premises, thus injuring and depreciating in value his property. To the declaration the defendant pleaded the general issue and five years' Statute of Limitations, and on a trial before the court, without a jury, the plaintiff recovered a judgment for $3000, which was affirmed in the Appellate Court. To reverse the judgment of the Appellate Court, defendant has brought the record here by appeal.

In order that the questions of law which are presented by the record may be properly understood, a brief statement of the facts upon which the legal questions arise, seems to be required.

The Chicago, Danville and Vincennes Railroad Company, a corporation organized under a charter granted by the State in 1865, under the powers contained in the charter and under an ordinance of the city of Chicago, in 1872 constructed a line of railroad, from a point on Ada street, some two blocks west of plaintiff's property, to the depot of the company, which was three blocks east of plaintiff's property. The track so constructed runs near plaintiff's property, in a south-easterly direction. The company about the same time built two short spurs from its main track, west of plaintiff's property. The company also constructed two spurs from its main track, south of plaintiff's property, running east to near Curtis street, to coal yards. The company also constructed a spur leaving the main track south of plaintiff's property, and running south-west to the coal yard of Woodruff & Turnkey. The

line of road, with its spurs and side-tracks, was operated by the company until 1875, when the railroad passed into the hands of a receiver, under an order of the Circuit Court of the United States for the Northern District of Illinois. The road was then operated by a receiver until April, 1877, when it was sold, under decree of the court, to certain parties, who took possession and operated the road until August 28, 1877, when they sold out to the Chicago and Nashville Railroad Company. On this date, the last named company and the State Line and Covington Railroad Company were consolidated, forming the Chicago and Eastern Illinois Railroad Company,—the defendant. The defendant commenced to operate the road on August 28, 1877. The map in the record, "Exhibit B," shows the condition of the tracks at this time. After the defendant took possession of the road, it constructed one additional spur to the coal yard of Woodruff & Turnkey, to furnish additional facilities for handling coal. The condition of the tracks while defendant operated the road, is shown by a map in the record, marked "Exhibit A." We do not understand, from the evidence, that this additional track, constructed to the coal yard of Woodruff & Turnkey, by the defendant, enhanced the damages to the plaintiff's property. On the other hand, Turnkey testified (and he is not contradicted) that "the additional tracks in our yard could not, in any manner, affect the McAuley property, and if it did, it would enhance its value. This additional switch reduced the actual work done there by the engines."

On the trial of the cause, the defendant, among others, submitted to the court the following proposition of law, which was refused: "When a railroad company builds and operates a railroad in this State, and as a result of such building or operation the property of an adjacent property owner is damaged, the party so damaged must commence his suit within the period of five years from the time said railroad was built, or commenced operation as a railroad."

Before proceeding to a consideration of the proposition submitted, it may be proper to state that the decision in *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 Ill. 203, substantially settles the principal questions involved in this case, although not presented in the same form as here. That was an action brought against the same railroad company as this, to recover damages to property located in the same neighborhood, which arose under the same circumstances as in this case, with one exception. In this case, the action was brought by the person who owned the property claimed to be damaged, in 1872, when the road was first constructed and placed in operation, while in the case cited, Loeb bought his property in 1876, of the person who owned when the road was constructed and placed in operation. Here, the Statute of Limitations is pleaded, while in the *Loeb case* the defence interposed was, that the entire cause of action accrued to Loeb's grantor, the owner of the property in 1872, when the road was constructed and placed in operation. After a careful consideration of the *Loeb case,* and the authorities bearing upon it, we held that the entire cause of action, not only for present but future damages, accrued to the person who owned the property at the time the road was constructed and placed in operation, and that the vendee of such owner could not recover. We are entirely satisfied with the conclusion reached in that case, and adhere to it.

As stated before, McAuley was owner in 1872, when the Chicago, Danville and Vincennes Railroad Company constructed its road and placed it in operation. The question presented by the decision of the court on the proposition of law is, whether his action is barred by section 15, chapter 83, of the Statute of Limitations, which reads as follows: "Actions to recover damages for an injury done to property, real or personal, * * * and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued." The fact was established, by

uncontroverted evidence, that the Chicago, Danville and Vin-cennes Railroad Company constructed its road in 1872, with its side-tracks, spurs and switches, and operated the same until 1875, when the road passed into the hands of a receiver, and was operated until 1877, when it passed into the hands of the defendant. The cause of action, therefore, accrued in 1872, but this suit was not brought until 1881, long after the Statute of Limitations had run against the cause of action.

But it is said, in the argument, that there is no proof in the record that any damage was done to the plaintiff's property while the road was operated by the Danville company. It may be true that no witness stated, in terms, that smoke, cinders and ashes were thrown in or upon plaintiff's premises during that time; but that is a matter of no consequence whatever. The evidence does, however, show that the road was operated over the same tracks, in the same manner, by the Danville company; that it has been operated by the defendant; and if no damages were sustained under the one management, it seems plain none could accrue under the other.

But it is said that the statute does not apply to a case of this character. Wood on Limitations, 371, says: "The rule in reference to acts amounting to a nuisance is, that every continuance is a new nuisance, for which a fresh action will lie, so that, although an action for the damage from the original nuisance may be barred, damages are recoverable for the six years preceding the bringing of the action, provided such a period of time has not elapsed that the person maintaining it has acquired a presumptive right to do so. * * * But while this is the rule as to nuisances of a transient rather than of a permanent character, yet when the original nuisance is of a permanent character, so that the damage inflicted thereby is of a permanent character, and goes to the entire destruction of the estate affected thereby, a recovery not only may, but must, be had for the entire damage, in one action,

as the damage is deemed to be original." The author also says: "And as the entire damage accrues from the time the nuisance is created, and only one recovery can be had, the Statute of Limitations begins to run from the time of its erection, against the owner of the estate or estates affected thereby." See, also, on the same question, *Troy* v. *Cheshire Railroad Co.* 23 N. H. 101; *Powers* v. *Council Bluffs,* 45 Iowa, 652; Wood on Nuisances, 889.

In the *Troy case* it is said: "The railroad is, in its nature and design and use, a permanent structure, which can not be assumed to be liable to change. The appropriation of the road-way and materials to the use of the railroad is therefore a permanent appropriation. * * * The injury done to the town is then a permanent injury at once, done by the construction of the railroad, which is dependent upon no contingency of which the law can take notice, and for the injury thus done to them they are entitled to recover, at once, their reasonable damages."

In *E. L. and B. S. R. R. Co.* v. *Combs,* 10 Bush, (Ky.) 393, which was an action to recover damages for throwing smoke, cinders and ashes, as is the case here, the court said: "We have heretofore held, in actions for injury to real estate by trespassers, that the plaintiff can only recover compensation for the injury done up to the commencement of the action; but that was in case of injuries not continuing and permanent in their character. The injury in this case, if any, is permanent and enduring, and no reason is perceived why a single recovery may not be had for the whole injury to result from the acts complained of."

If, as held in the case last cited, the entire damages might be recovered in a single action, it follows that the entire cause of action accrued in 1872, when the railroad was constructed and placed in operation, and if that be true, the Statute of Limitations then commenced to run, and the action was barred long before this suit was commenced. Indeed, the

decision in the *Locb case,* heretofore cited, leads to the same conclusion. We there expressly held, that upon the construction and putting in operation of a railroad, all damages which would be sustained as the necessary result of the operation of the road can be immediately estimated, and must be recovered in one action. The only logical conclusion to be drawn from that decision is, that unless an action is brought to recover the damages after they accrue, within the period provided by the statute, the cause of action will be barred.

Since the decision of the *Loeb case,* it has been suggested by counsel for the plaintiff that the question whether the Statute of Limitations, pleaded in this case, is a bar to a recovery, is one of fact, not reviewable here. We do not concur in this view. The question of law was raised by the proposition submitted, which the court refused.

The judgment of the Appellate and circuit courts will be reversed, and the cause will be remanded.

*Judgment reversed.*