PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA, Plaintiff,

v.

CITY OF ATLANTA, Defendant.

Civil Action File No. 1:93–CV–1341–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 28, 1995.

Michael Weinstock, Alan Robert Heath, and Richard John Capriola, Weinstock & Scavo, Atlanta, GA, for Provident Mutual Life Insurance Company of Philadelphia.

Charles George Hicks, Office of Atlanta City Attorney, Atlanta, GA, for City of Atlanta and Andrew L. Bell.

### ORDER OF THE COURT

CAMP, District Judge.

This action is before the Court on Defendant's Renewed Motion for Judgment on the Pleadings [# 35–1] or for Summary Judgment [# 35–2],[1] and Motion to Extend Time to Refile Motion for Summary Judgment [# 34–1]. For the following reasons, Defendant's Motion for Summary Judgment [# 35] is **GRANTED.**

Defendant's Motion to Extend Time to Refile is based upon a leave of absence granted counsel for the dates the motion was originally due. Accordingly, this Motion [# 34] is **GRANTED.**

### I: BACKGROUND

Plaintiff in this action is the owner of a commercial office complex at 2459 Roosevelt Highway. Plaintiff seeks damages against Defendant due to its operation of the William B. Hartsfield Atlanta International Airport [hereinafter "Airport"]. Plaintiff's property is located near the Airport and is in the direct flight path of aircraft departing from and landing on runways 9R and 9L. Plaintiff claims high levels of noise, dust, exhaust and vibrations from the planes have injured its use and enjoyment of the property.

The Court granted in part Defendant's original Motion, dismissing Plaintiff's Fifth Amendment "takings" and state law punitive damages claims, and granting summary judgment on Plaintiff's state law physical inverse condemnation claim and Equal Protection claims. However, Defendant was denied summary judgment on the issue of inverse condemnation by nuisance. Defendant was permitted to refile its motion to more thoroughly address Plaintiff's state law claims of nuisance and trespass, and its defense of federal immunity.

### II: SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor....'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied*, 16 F.3d 1233 (1994) (en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the movant's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the movant bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue. It must support its motion with credible evi-

---

**1.** Defendant submitted a Reply brief months after filing this motion. It did not seek leave for late filing. Ordinarily, the Court would not consider a late response unless parties moved for late filing. *See* Local Rule 220–1(b). Also, Plaintiff's surreply is normally not permitted without prior motion. *Id.* However, parties seek to bring to the Court's attention a recent case which may dispose of issues before the Court. Accordingly, the briefs will be considered.

dence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels,* 941 F.2d at 1437–38).

On the other hand, when the non-movant bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim but may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the movant may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-movant may not rely upon allegations or denials in the pleadings. Fed.R.Civ.P. 56(e). The non-movant must respond with sufficient evidence to withstand a directed verdict motion at trial. *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (citing *Fitzpatrick,* 2 F.3d at 1116–17). The non-movant may do so either by pointing out evidence in the record which the movant overlooked or by coming forward with additional evidence. *Id.*

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 249, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. at 2510.

## III: ANALYSIS

Remaining in the case are Plaintiff's claims for nuisance and trespass, and Plaintiff's state-law claim for inverse condemnation based upon a taking by nuisance. Plaintiff's inverse condemnation claim is thus dependent in substance upon the outcome of its nuisance claim.

Defendant has renewed its motion for summary judgment based on the following assertions: (1) the Airport is not a nuisance because it was constructed and operated in a proper manner, (2) Plaintiff's complaint fails to state a claim for trespass or the trespass claim is barred by the statute of limitations, (3) Plaintiff's claims are barred prior to six months before the *ante litem* notice was given, (4) Plaintiff is barred by federal immunity from damages for airport noise.

The Court originally ruled that Plaintiff was entitled to pursue its trespass and nuisance claims under a continuing tort theory, so that Plaintiff's claims would have accrued within the statute of limitations. In light of Defendant's Renewed Motion for summary judgment, the Court has reconsidered its earlier ruling and reexamined the cases on which it was based.

The Court notes that, regardless of its ruling on accrual, a recent decision by the Georgia Supreme Court sharply limits Plaintiff's claims for nuisance and trespass. *City of Chamblee v. Maxwell,* 264 Ga. 635, 452 S.E.2d 488 (1994). *Maxwell* determined that under Georgia's *ante litem* notice requirement, O.C.G.A. § 36–33–5, a plaintiff may recover only those damages received during the six months prior to giving a defendant municipality notice of its claim. *Id.*

### A) The Law of Nuisance

A structure "located and constructed [as authorized by law], if constructed and operated in a proper manner, cannot be adjudged a nuisance. This applies with special force to works thus authorized to facilitate transportation . . ., which are of a quasi-public nature." *Ga R.R. & Banking Co. v. Maddox,* 116 Ga. 64, 77, 42 S.E. 315 (1902); *Delta Air Corp. v. Kersey,* 193 Ga. 862, 867, 20 S.E.2d 245 (1942). However, if such structure is improperly constructed or negli-

gently operated so that it produces smoke, cinders, noise, etc., "largely in excess of what would result from its proper operation," it may create a nuisance. *Maddox,* 116 Ga. at 80, 42 S.E. 315.

There is no dispute that construction of Defendant's Airport was authorized by law. Plaintiff does not dispute the Airport's proper construction. However, Plaintiff does allege that the Airport is improperly operated so as to create a nuisance.

Defendant asserts that Plaintiff's claims are barred by the statute of limitations. Plaintiff's claims are subject to a four-year statute of limitations for damage to real property. O.C.G.A. § 9–3–30. The Complaint was filed June 16, 1993. If Plaintiff's claims for nuisance and trespass arose before June 17, 1989, its claims are barred by the statute of limitations. Therefore, the central question is when did the statute of limitations began to run against Plaintiff's claims.

*B) The Restatement Approach to Nuisance Claim Accrual*

The Second Restatement of Torts outlines a method for determining claim accrual where there has been continuing harm. Restatement (Second) of Torts § 899, comment d (elaborating on the Restatement Rule that a claim may be barred by a statute of limitations). The "approach" of the Restatement was adopted by the Georgia Supreme Court in *Cox v. Cambridge Square Towne Houses, Inc.,* 239 Ga. 127, 128–29, 236 S.E.2d 73 (1977). The Restatement provides that

> in cases in which a public utility or government agency erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream and the interference with the plaintiff's interest is not abatable by a proceeding in equity, the statutory period

[of limitations] normally begins when the structure is completed or the activity is begun.

Restatement (Second) of Torts § 899, comment d, at 443, "Continuing Harm—Nuisance" (1979). The Restatement contrasts such immediately observable and non-enjoinable harms with nuisances which may have an insidious effect, such as a bridge which only causes flooding at a later time. *Id.* These types of harms accrue upon the injury and not upon erection of the structure. *See id.* Finally, the Restatement suggests a distinction between nuisance caused by a publicly beneficial structure and those caused by a purely private entity.[2] *See id.,* § 899, comment d, at 443, & § 930, comment c, at 550 (enterprises of public interest must be sued in single action for both past and future damages).

 Accordingly, the Restatement defines three major categories of nuisance for which three different rules are to be applied. The types of nuisance created depend first upon who or what created the nuisance (a publicly beneficial or private entity), second, on the obviousness of the injury received (patent or latent). Therefore public entities who cause nuisance that is immediately apparent must be sued upon the creation of the offending structure and its attendant circumstances. Public entities which create harms that do not immediately occur after a change in structure should be sued on receipt of the harm, not the construction. Private entities which may be enjoined from continuing to create a nuisance may be sued for continuing nuisance as harm is received.[3]

*C) Georgia Cases: Nuisance and Statute of Limitations*

Georgia cases dealing with accrual of a cause of action for nuisance conform to the

---

2. It is the nuisance relating to a private entity and the corresponding election rule which was specifically adhered to by the Georgia Supreme Court in *Cox.* However, the same Restatement rule provides for "an enterprise affected with a public interest." Restatement (Second) of Torts, § 899, comment d. The Georgia Supreme Court characterized the rule as "both comprehensive and workable," as well as reaching a result consistent with results reached in the Georgia cases. *Cox,* 239 Ga. at 128–29, 236 S.E.2d 73.

3. The distinction is explained by the fact that the public entity's activity will not be abated. *See Smith v. Dallas Utility Co.,* 27 Ga.App. 22, 25, 107 S.E. 381 (1921). Therefore, plaintiff's claim for permanent diminution in the value of the property accrues immediately, whereas a private entity's operation can and will be abated so as not to damage plaintiff's property permanently. *See Cox,* at 129, 236 S.E.2d 73.

pattern outlined in the Restatement. *See Cox,* 239 Ga. at 128–29, 236 S.E.2d 73 (noting that application of the Restatement approach to continuing nuisance would lead same result as appears in the Georgia cases).

*Cox* concerned a private nuisance created by a private entity. 239 Ga. 127, 236 S.E.2d 73. According to the Restatement, "[i]n cases of this type, the statute does not run from the time of the first harm except for the harm then caused." *Id.* at 128, 236 S.E.2d 73 (quoting Restatement (Second) of Torts § 899, comment d). Accordingly, the harm is treated as continuing and subsequent suit is permitted for new damage received. *Id.,* at 128–29, 236 S.E.2d 73; *see also Danielly v. Cheeves,* 94 Ga. 263, 269, 21 S.E. 524 (1894).

The seminal Georgia case treating accrual of nuisance claims represents the type of public nuisance resulting in harm which was not certain to occur. *City Council of Augusta v. Lombard,* 101 Ga. 724, 28 S.E. 994 (1897). In *Lombard,* defendant removed water gates from a canal which caused flooding to plaintiff's business located on the canal. *Id.* The water gates were removed more than four years before plaintiff's land was flooded. *Id.,* at 725, 28 S.E. 994. It thus was not apparent whether any damage would actually occur to plaintiff until it happened. The court held that the removal of the gates was not per se a nuisance, but became a nuisance through discharging water onto plaintiff's property. *Id.,* at 729, 28 S.E. 994. The court stated, "[w]hen such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated . . . is only the damage which has happened. . . ." *Id.,* at 728, 28 S.E. 994. Thus, plaintiff's claims accrued only at the time the water flooded his property (on receipt of harm), not upon removal of the gates. *Id.,* at 729, 28 S.E. 994; *see also Hoffman v. Atlanta Gas Light Co.,* 206 Ga. App. 727, 730, 426 S.E.2d 387 (1992), Cert. Den.

The *Lombard* court based the accrual distinction on whether plaintiff's damage was "complete upon the completion of the act by which the nuisance is created." 101 Ga. at 727, 28 S.E. 994. In such case, the claim accrues immediately upon creation of the nuisance. *Id.* The *Lombard* court further addressed the distinction in the following passage.

A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the creation of the act by which the nuisance is created, gives but one right of action which accrues immediately upon the creation of the nuisance and against which the statute of limitations begins from that time to run. *Id.* at 727, 28 S.E. 994 (citing, inter alia *Chicago & E. Ill. R.R. Co. v. McAuley* 121 Ill. 160, 11 N.E. 67 (1887)). The cases on which the Georgia Supreme Court relied to distinguish accrual of a nuisance reveal when damage is "complete".

For example, the plaintiff in *McAuley* sued a nearby railroad for nuisance because of smoke, cinders, and vibrations which damaged the use and enjoyment of his property. The court determined that the use and operations of the railroad had not essentially changed since 1872, thus plaintiff's damage was permanent. "The railroad is, in its nature and design and use, a permanent structure, which cannot be assumed to be liable to change." *McAuley,* 121 Ill. at 164–65, 11 N.E. 67.[4] "[S]uch damages accrue from the time the nuisance is created, and from that time the statute of limitations begins to run." *Id.* Therefore, plaintiff should have sued once the damage became obvious, which was upon operation of the railroad.

The Georgia case of *Smith v. Dallas Utility Co.* represents just such an obvious nuisance created by a publicly beneficial structure. *Smith,* 27 Ga.App. 22, 107 S.E. 381 (1921). In *Smith,* a dam over a nearby creek caused plaintiff's property to be frequently submerged in whole or in part. The dam provided power and light to homes and businesses in the area. *Id.* There was no way to prevent the overflow of water except by destroying the dam, but its public character

4. Georgia courts have also recognized that a publicly beneficial structure whose operation will not be abated is a nuisance permanent in charac-

ter. *See, e.g., Lombard,* 101 Ga. at 727, 28 S.E. 994; *Smith,* 27 Ga.App. at 25, 107 S.E. 381.

made destruction impossible. *Id.*, at 25, 107 S.E. 381. Although plaintiff claimed that the maintenance of the dam was a continuing nuisance, the dam itself was permanent, not abatable, and thus provided no "fresh nuisance" on which to base a cause of action. *Id.*

The injury to plaintiff's property was immediately apparent. *Smith*, 27 Ga.App. at 23, 107 S.E. 381 (dam was erected in 1910 or 1911, and plaintiff's land was first damaged in 1910). Accordingly, the plaintiff's claims accrued on "the completion of the dam *and the infliction of the injury to her property....*" *Id.*, at 24, 107 S.E. 381 (emphasis in original). This nuisance claim accrued when the structure was complete and it caused plaintiff harm.

### D) Plaintiff's Claim

In the instant case, the operation of Defendant's Airport is a publicly beneficial enterprise which will not be enjoined. *See Smith*, 27 Ga.App. at 25, 107 S.E. 381. *But see Goble v. Louisville and Nashville R.R. Co.*, 187 Ga. 243, 200 S.E. 259 (1938) (bridge causing flooding rebuilt by railroad company can be enjoined). Indeed, Plaintiff does not even seek an injunction. Any nuisance claim against Defendant must be treated as against a public entity whose operation will not be enjoined.

The next question, then, is to determine when Plaintiff received injury. Plaintiff's claim accrued when the specific injury complained of became obvious. The features of the Airport's operation about which Plaintiff specifically complains are noise, dust, exhaust, and vibrations from the planes.

The area of the Airport which produces the offending features has been in daily use since Runway 9L–27R became operational in 1985. The noise and dust generated by the planes must have been obvious from the first use of that runway. Airports, just as railroads, have attendant circumstances which may indeed constitute nuisances. *See Maddox*, 116 Ga. at 77, 42 S.E. 315 (noting noise, rumbling, vibration, smoke, cinders, etc. can be ordinary and necessary adjuncts of the railroad). However, those offending features do not occur only once yearly, but are apparent from its initial operation. *Compare*

*Lombard*, 101 Ga. at 725, 28 S.E. 994 *with McAuley*, 121 Ill. at 164–65, 11 N.E. 67; *see also City of Atlanta v. Starke*, 192 Ga.App. 267, 384 S.E.2d 419 (1989) (pattern of flight routing permanent, so accrual fixed).

The noise, vibration, and exhaust in the instant case are produced by the operation of the Airport structure itself. These offenses are bound to occur, to a greater or lesser degree, with each flight. Conversely, injury to property through intermittent flooding does not occur with mere use or operation of a dam. In the first case, the injury is apparent from the initial *use* of the structure. In the second case, the injury is not immediately occurring, but may only become obvious over time or depend on a combination of circumstances, such as the effect of weather conditions, on the structure. The injury in the instant case is of the first type—immediately apparent.

Further, Defendant has established, and Plaintiff has not disproved, that the Airport has not significantly increased in the "type or frequency" of its flight operations since January 1987. (Order of June 30, 1994, pp. 19–21 (citing Bell Affidavit; McIntyre Affidavit)). Accordingly, there is no "fresh nuisance" on which to base a cause of action. Plaintiff's nuisance cause of action accrued upon receipt of its injury, which occurred no later than the offending runway's operation at present levels, beginning in 1987.

The result of *Duffield v. DeKalb County*, 242 Ga. 432, 249 S.E.2d 235 (1978), is not inconsistent with this ruling. The Georgia Supreme Court in *Duffield* noted that a nuisance claim is not barred if the nuisance occurs or increases within the statute of limitations. *Id.*, at 436, 249 S.E.2d 235. The court relied on plaintiff's allegation of an increase in extent of the nuisance within the statute of limitations to deny summary judgment. *Id.* In this case, on the other hand, the factual finding that the extent of the nuisance has not increased within the statute of limitations mandates summary judgment. *See id.*

The operation of the Airport as a publicly beneficial entity will not be enjoined. Thus, Plaintiff may sue only once for any continu-

ing and permanent damage to its property from the Airport's operation. Plaintiff's right to sue must be exercised within four years of the creation or increase of the nuisance if the harm is readily apparent. Accordingly, Plaintiff's nuisance claim is barred by the statute of limitations. Plaintiff's inverse condemnation claim accrued at the same time as its nuisance claim. Therefore, Plaintiff's remaining claim for inverse condemnation based upon a taking by nuisance is barred as well.

### E) Trespass Claim

Nuisance and trespass are closely analogous claims. *Rinzler v. Folsom,* 209 Ga. 549, 552, 74 S.E.2d 661 (1953). The two claims are distinguishable chiefly in the manner of interference with one's property. *Jillson v. Barton,* 139 Ga.App. 767, 768, 229 S.E.2d 476, 478 (1975) (distinguishing between trespass and nuisance as "direct" versus "indirect" tort); *see also Kersey,* 193 Ga. at 868, 20 S.E.2d 245 ("even when the act [plane overflights] does not constitute a trespass, it could be a nuisance"). Therefore, it is appropriate to treat the accrual of claims of trespass and nuisance in similar fashion.

Plaintiff's nuisance claim accrued no later than 1987 with the present level of flight operations from Runway 9L–27R. (*See* Order of June 30, 1994, pp. 19–21). Plaintiff's trespass claim also accrued when the invasions of the airspace over its property reached present levels. This happened no later than 1987. (*Id.*) The injury to its property thus began more than four years ago, and the statute of limitations began to run at that time. Accordingly, Plaintiff's trespass cause of action is barred by the applicable statute of limitations.

### IV: CONCLUSION

Therefore, Defendant's Renewed Motion for Summary Judgment [# 35] is **GRANTED.** Defendant's Motion for Extension of Time [# 34] is **GRANTED.** All claims in this suit have thus been disposed of. The Clerk is **DIRECTED** to enter judgment accordingly.